**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| ROBERT SANDERS, #M54914, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| vs. | ) | **Case No. 25-cv-02139-SMY** |
| | ) | |
| DARREN GALLOWAY, | ) | |
| P/O JOHN DOE 1, | ) | |
| C/O JOHN DOE 2 (JONES), | ) | |
| LT. KARL R. BRADFORD, | ) | |
| LT. JACOB HORN, | ) | |
| NURSE JANE DOE 1, | ) | |
| NURSE JANE DOE 2, | ) | |
| and C. KWIATKOWSKI, | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM AND ORDER

**YANDLE, Chief District Judge:**

Plaintiff Robert Sanders filed this lawsuit pursuant to 42 U.S.C. § 1983 for alleged constitutional claims stemming from a cellmate attack at Shawnee Correctional Center. He seeks monetary relief. The Complaint (Doc. 1) is before the Court for review pursuant to 28 U.S.C. § 1915A, which requires early screening and dismissal of any portion that is legally frivolous or malicious, fails to state a claim for relief, or seeks money damages from an immune defendant. *See id*.

### The Complaint

Plaintiff makes the following allegations in the Complaint (Doc. 1, pp. 1-37): Plaintiff transferred from Jacksonville Correctional Center to Shawnee Correctional Center on December 13, 2023. *Id*. at 6. His transfer was prompted by his refusal of housing with inmates who smoked and ate drug-laced paper contraband at Jacksonville. Plaintiff outlined these concerns

1

with his health and safety in an emergency grievance and letter he sent to Warden Darren Galloway on December 14, 2023. *Id*.

Two days later, Plaintiff was placed in restrictive housing and assigned a cellmate who smoked synthetic drugs. *Id*. at 7. Plaintiff should not have been housed with Inmate Brown for several reasons. Plaintiff had not completed intake, he had a pending disciplinary infraction, and he suffered from severe mental illness. Inmate Brown had a history of drug use, violence, and gang activity. He was also much larger than Plaintiff (Inmate Brown weighed 210 pounds, while Plaintiff weighed only 125 pounds). *Id*.

Other inmates soon tried to convince Inmate Brown that Plaintiff was a confidential informant. Inmate Brown told Plaintiff he was member of the gangster disciples and could not be housed with a "snitch." *Id*. at 8. To avoid conflict, Plaintiff agreed to request a housing change. The two inmates completed a cell change form and submitted it to staff during mail collection. Plaintiff also submitted his request to a placement officer. *Id*.

The same night, Inmate Brown obtained drug-laced paper contraband and began smoking it. Staff allowed trafficking, trading, and smoking of this contraband. Warden Galloway had knowledge of the rampant drug use in restrictive housing but failed to implement remedial measures. *Id*.

The housing situation grew tense on December 17, 2023, when other inmates asked why Inmate Brown was still housed with a "snitch." *Id*. at 9. Inmate Brown threatened to harm Plaintiff in the presence of staff. He also wrote grievances and letters threatening to harm him if the housing situation did not change. Inmate Brown sent this correspondence to Placement Officer John Doe 1 (P/O Doe 1) and Warden Galloway. On three occasions, Inmate Brown told Correctional Officer John Doe 2 (Jones) (C/O Doe 2) that he would "beat [Plaintiff's] ass or even kill [him] . . . [if] yall

2

don't move him out of my cell." *Id*. at 10.  Plaintiff requested a housing change again.  *Id*. at 9.

C/O Doe 2 laughed off this request, saying, "[Y]our celly aint going to [do] nothing he's just

talking." *Id*. (errors in original).  He recommended writing a grievance instead. *Id*. at 9-10. When

Plaintiff requested and was denied a grievance form, he wrote a letter to Warden Galloway and

P/O Doe 1 on December 17, 2023. *Id*. at 10.  The same evening, Inmate Brown became high while

smoking synthetic contraband and warned Plaintiff, "tomorrow might be your last day celly. I

think I may act tomorrow celly." *Id*. at 10-11.

On December 18, 2023, Plaintiff was taken for processing by P/O Doe 1 and refused to

return to the cell.  *Id*. at 11.  Plaintiff explained that Inmate Brown was a frequent smoker who

believed Plaintiff was a confidential informant and threatened to harm him for this reason.

P/O Doe 1 agreed to help Plaintiff move.  P/O Doe 1 called the placement office and confirmed

that Plaintiff's request for a housing change was being processed.  In the meantime, P/O Doe 1

warned Plaintiff not to refuse housing because he would receive a disciplinary ticket.  *Id*.

Plaintiff waited for a housing change, but it never occurred.  When he requested the status

of his housing change during another shift, the staff had no idea what he was talking about.

Plaintiff wrote P/O Doe 1 to complain that his safety was not taken seriously.  *Id*. at 12.  Inmate

Brown began smoking again and accused Plaintiff of snitching to get moved.  Inmate Brown then

wrote to the warden and told Plaintiff, "If this don't work, I'm killing you!"  *Id*.

On December 19, 2023, Inmate Brown was taken from the cell and later returned upset.

Lieutenant Horn had confronted him about sending threats against Plaintiff through the mail, and

Inmate Brown refused to talk to the officer.  After smoking, Inmate Brown again threatened

Plaintiff, who sent the warden a cell change form and letter complaining about the risk of a cellmate

assault.  *Id*.

On December 20, 2023, Plaintiff awakened to the strong smell of smoke. Inmate Brown was acting strangely, while grinding his teeth, staring wide-eyed, and lashing out at staff. Inmate Brown told Lieutenant Karl Bradford and C/O Doe 2 that he would kill Plaintiff or take him hostage. *Id*. at 13. Both officers commented that he must be high. Lt. Bradford then told Inmate Brown to "go ahead and kill [Plaintiff] and you'll be in prison for life." *Id*. With that, both officers walked away from the cell.

Moments later, Inmate Brown knocked Plaintiff unconscious. He then assaulted him, hogtied him, and took him hostage. When Plaintiff regained consciousness, Inmate Brown was abusing him physically and sexually, while carrying out requests for different types of assault on Plaintiff from other inmates. As C/O Doe 2 approached the cell, Inmate Brown placed a cover over the bed to block the officer's view of Plaintiff. Inmate Brown told the officer he should have been taken seriously when he warned staff that he would kill Plaintiff. *Id*. at 14. Plaintiff called out for help, and Inmate Brown delivered blows to his head until he lost consciousness again. Plaintiff next recalled staff members removing the rope and ripped sheet used to hogtie him while other staff members subdued Inmate Brown. *Id*.

Plaintiff was injured to the point that he could not walk, so he was escorted to Shawnee's health care unit (HCU). Nurses Jane Doe 1 and 2 examined him in the presence of numerous male staff members and Warden Galloway. When Plaintiff complained of pain in certain areas, like his knee, Nurse Doe 1 implied that he was faking it. Plaintiff did not feel like he could report his injuries. Nurse Doe 1 then stopped the exam and gave staff a blister pack of Tylenol for Plaintiff. *Id*. at 15.

Warden Galloway worked with other staff to photograph Plaintiff's injuries. *Id*. The warden apologized for what happened and said he thought Plaintiff had moved from the cell.

4

Warden Galloway informed Plaintiff that he would immediately be transferred for his safety. When Plaintiff asked for his Tylenol and crutches/walker, Nurses Doe 1 and 2 denied his requests. They said he would receive treatment at his new facility. *Id*. at 16.

Plaintiff was forced to hop on one leg to a shower where Behavioral Health Technician Kwiatkowski (BHT Kwiatkowski) conducted a mental health assessment. During the interview, Plaintiff was separated from six tactical team members by a shield. Inmate Brown was stationed in a shower only twenty feet away. As BHT Kwiatkowski completed Plaintiff's mental health assessment, Inmate Brown called him names, threatened him, and yelled at him. BHT Kwiatkowski knew that a mental health assessment conducted under these conditions was ineffective and failed to use the assessment to make referrals for treatment with qualified mental health professionals. *Id*. at 17. Due to his fear, Plaintiff did not report his sexual assault while at Shawnee. Following his transfer to Pinckneyville, Plaintiff attempted suicide. *Id*. at 19.

Based on the allegations, the Court designates the following claims in the *pro se* Complaint:

Count 1:     Eighth Amendment claim against Warden Galloway for exhibiting deliberate indifference to the serious risk of harm to Plaintiff's present and future health and safety posed by smoked drugs at Shawnee.

Count 2:     Eighth Amendment claim against Warden Galloway, P/O Doe 1, C/O Doe 2 (Jones), Lt. Bradford, and Lt. Horn for failing to protect Plaintiff from the serious risk of attack by his cellmate at Shawnee in December 2023.

Count 3:     Eighth Amendment claim against Nurses Jane Doe 1 and 2 for responding with deliberate indifference to Plaintiff's injuries following the attack by his cellmate at Shawnee in December 2023.

Count 4:     Eighth Amendment claim against BHT Kwiatkowski for responding with deliberate indifference to Plaintiff's mental health needs following the attack by his cellmate at Shawnee in December 2023.

Count 5:     Illinois intentional infliction of emotional distress claim against Defendants for their action or inaction in Plaintiff's attack by a cellmate and denial of medical and/or mental health care in December 2023 at Shawnee.

Count 6:        Illinois negligence claim against Defendants for causing injuries to Plaintiff by breaching the duty of care they each owed to him.

Any other claim mentioned in the Complaint but not addressed herein is dismissed without prejudice as inadequately pled under *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

## Discussion

## Count 1

An Eighth Amendment claim for unconstitutional conditions of confinement arises when a defendant responds with deliberate indifference to a substantial risk of harm posed to an inmate's health or safety by his living conditions.  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  This claim requires allegations of an objectively serious denial of "the minimal civilized measure of life's necessities," such as food, clothing, medical care, or housing.  *Farmer*, 511 U.S. at 834.  It also requires allegations of deliberate indifference by each defendant.  *Id*.

Although the Eighth Amendment does not guarantee smoke-free or drug-free prisons, an inmate may state a claim if he alleges that prison officials disregarded a serious risk to his health or safety.  *Rogers v. Crow*, 2023 WL 8235752, at *2 (S.D. Ill. Nov. 28, 2023) (citing *Tellez v. Uchtman*, 2010 WL 746991, at *3-4 (S.D. Ill. March 1, 2010).  Here, Plaintiff alleges he was exposed to the rampant use of smoked drugs at the prison, but describes no exposure to drugs by anyone other than his cellmate.  Nor does he claim to have medical conditions that could be exacerbated by his alleged exposure to drug use in the general inmate population.  As such, Count 1 will be dismissed for failure to state a claim.

## Count 2

The Eighth Amendment also imposes a duty on prison officials to take reasonable steps to protect inmates from violence at the hands of other inmates.  *Farmer*, 511 U.S. at 833.  A plaintiff bringing a failure-to-protect claim must plead facts suggesting he was incarcerated under

conditions posing a substantial risk of harm to his health or safety and describing deliberate indifference by each defendant. *Id*. *See also Pinkston v. Madry*, 440 F.3d 879, 889 (7th Cir. 2006). He must identify a specific, impending, and substantial threat. *Pope v. Shafer*, 86 F.3d 90, 92 (7th Cir. 1996).

According to the allegations, Plaintiff repeatedly informed Warden Galloway, P/O Doe 1, C/o Doe 2, Lt. Bradford, and Lt. Horn about the threat to his safety posed by Inmate Brown from December 16-20, 2023, each defendant knowingly or intentionally disregarded the risk, and Plaintiff was attacked on December 20, 2023. Therefore, Count 2 will proceed against these defendants.

### Counts 3 and 4

An Eighth Amendment claim may also arise from the denial of adequate medical care or mental health treatment. *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976); *Kupsky v. McLaren*, 748 F. App'x 74 (7th Cir. 2019). To state a claim, a plaintiff must allege: (1) a serious medical or mental health condition; and (2) each defendant acted with deliberate indifference to the condition by consciously disregarding it. *Id*.

As for Count 3, Plaintiff alleges he suffered serious injuries during a cellmate attack on December 20, 2023. Among other things, his knee was injured to the point that he could not walk. Even so, Nurse Jane Doe 1 and Nurse Jane Doe 2 failed to adequately evaluate or treat the injury. They also denied his request for treatment of pain with Tylenol or mobility assistance with crutches/walker, deferring all treatment until he arrived at his next prison. Based on these allegations, Count 3 will proceed against Nurses Jane Doe 1 and 2.

With respect to Count 4, Plaintiff alleges he suffered emotional trauma from his attack that was so severe he attempted suicide. He claims that immediately after the attack, BHT

7

Kwiatkowski conducted a mental health assessment of Plaintiff in a deliberately indifferent manner, by interviewing Plaintiff in a shower in the presence of six tactical team members and only twenty feet away from his attacker.  He further alleges that during his mental health assessment, his attacker yelled at him, called him names, and made threats of further harm.  The defendant then failed to make any referrals for treatment with a qualified professional.  Count 4 will therefore proceed against BHT Kwiatkowski for exhibiting deliberate indifference to Plaintiff's serious mental health condition following the cellmate attack on December 20, 2023.

### Counts 5 and 6

The Illinois state law claims for intentional infliction of emotional distress (IIED) (Count 5) and negligence (Count 6) arise from the same facts that give rise to the constitutional claims in Counts 1 through 4.  As such, the Court will exercise supplemental jurisdiction over them.  *See* 28 U.S.C. § 1367(a).

In Count 5, Plaintiff asserts an IIED claim against all defendants.  A claim for intentional infliction of emotional distress arises under Illinois state law when: (1) defendants engage in extreme and outrageous conduct; (2) defendants either intend to inflict severe emotional distress or know there is a high probability that their conduct will cause severe emotional distress; and (3) the defendants' conduct in fact causes severe emotional distress.  *McGreal v. Village of Orland Park*, 850 F.3d 308 (7th Cir. 2017).  As Plaintiff alleges the above-described conduct of each defendant resulted in emotional trauma that drove him to attempt suicide, Count 5 will proceed against the defendants.

Plaintiff asserts a negligence claim in Count 6.  He alleges each defendant owed him a duty of care and caused his injuries and resulting damages when they breached this duty.  He relies on the allegations offered in support of his Eighth Amendment deliberate indifference claims, which

are sufficient to state a viable negligence claim under Illinois law.  Count 6 will proceed.

**Identification of Unknown Defendants**

Plaintiff will be allowed to proceed with claims against the following unidentified defendants: Placement Officer John Doe 1, Correctional Officer John Doe 2 (Jones), Nurse Jane Doe 1, and Nurse Jane Doe 2.  These defendants must be identified by name before service of the lawsuit can be made on them.  The Current Warden of Shawnee Correctional Center will be added as a defendant, in an official capacity, and will be responsible for responding to discovery aimed at identifying the unknown defendants by first and last name.  Once the warden enters an appearance, the Court will enter a Doe Identification Order with instructions and deadlines for exchanging information to help identify these defendants.  Once their names are discovered, Plaintiff must file a motion to substitute the newly identified defendants in place of the generic designations in the Complaint.

**Disposition**

The Complaint (Doc. 1) survives screening pursuant to 28 U.S.C. § 1915A, and the following claims will proceed against the below-listed defendants:

- **COUNT 2** against **GALLOWAY, BRADFORD, HORN, PLACEMENT OFFICER JOHN DOE 1,** and **CORRECTIONAL OFFICER JOHN DOE 2**.

- **COUNT 3** against **NURSE JANE DOE 1** and **NURSE JANE DOE 2**.

- **COUNT 4** against **KWIATKOWSKI**.

- **COUNTS 5** and **6** against **ALL DEFENDANTS**.

- The **WARDEN OF SHAWNEE CORRECTIONAL CENTER (official capacity only)** is **ADDED** as a defendant for purposes of identifying each unknown defendant.

**COUNT 1** against **GALLOWAY** is **DISMISSED without prejudice** for failure to state a claim.

9

With regard to **COUNTS 2 through 6**, the Clerk shall prepare for **WARDEN OF SHAWNEE CORRECTIONAL CENTER (official capacity only), DARREN GALLOWAY, KARL R. BRADFORD, JACOB HORN, C. KWIATKOWSKI,** and, once identified, **P/O JOHN DOE 1, C/O JOHN DOE 2 (JONES), NURSE JANE DOE 1,** and **NURSE JANE DOE 2**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons).  The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint (Doc. 1), and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff.  If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require the Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address.  This information shall be used only for sending the forms as directed above or for formally effecting service.  Any documentation of the address shall be retained only by the Clerk and shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).  **Under SDIL-LR 8.2, Defendants need only respond to the issues in this Merit Review Order**.  **The Warden of Shawnee Correctional Center (official capacity defendant) need only appear in this matter.**

Plaintiff is further **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and the opposing parties informed of any change in his address; the Court will not

10

independently investigate his whereabouts. This shall be done in writing and not later than **14 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution.  *See* FED. R. CIV. P. 41(b).

**The Clerk's Office is DIRECTED to ADD the WARDEN OF SHAWNEE CORRECTIONAL CENTER (official capacity only) as a defendant in CM/ECF and ENTER the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.**

**IT IS SO ORDERED.**

**DATED:   May 6, 2026**

**STACI M. YANDLE**
**Chief U.S. District Judge**

## Notice to Plaintiff

Once identified, the Court will take the necessary steps to notify the Defendants of your lawsuit and serve them with a copy of your Complaint. After service has been achieved, Defendants will enter an appearance and file an Answer to your Complaint. It will likely take at least **60 days** *from the date they are served with this lawsuit* to receive the Defendants' Answers, but it is entirely possible that it will take **90 days** or more. When Defendants have filed their Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for Defendants before filing any motions, to give the Defendants notice and an opportunity to respond to those motions. Motions filed before Defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court now, unless specifically directed to do so.